## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MAURICE LEE SOLEDAD, R.,                     Case No. 1:18-cv-126
      Plaintiff,

                            Barrett, J.
    vs.                                          Bowman, M.J.

LT. WEBB, *et al.*,                          **ORDER AND REPORT**
      Defendants.                           **AND RECOMMENDATION**

Plaintiff, an inmate at the Warren Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983.  By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).  To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious.  *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).  A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke,* 490

U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S.

2

at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding pro se, brings this § 1983 action against defendants Mr. Berry, C/O McCoy, Ms. Kennedy, Sgt. Bradly, Captain Richardson, Major Hogan, C/O Fryer, Mr. Blackwell, Warden Justus, Sgt. Sherill, C/O Farby, C/O Moore, Mr. Craft, Warden Harris, Lt. Nelson, and Lt.Webb.  (Doc. 1, Complaint at PageID 4).  The forty-two page complaint, with ninety pages of exhibits, includes allegations spanning several years from both the London Correctional Institution (LoCI) and Warren Correctional Institution (WCI).

In the complaint, plaintiff first alleges that on September 27, 2015, while at LoCI, he was escorted to the captain's office because of a conduct report written against him for disobeying a direct order.  Plaintiff alleges that defendant Lt. Webb repeatedly asked him "What are you?" once at the captain's office, eventually stating that plaintiff was not a human being, but "a[n] inmate and you do what you [are] . . . told by any officer."  (*Id.* at PageID 6).  Webb told plaintiff he would be going to "ABBR Seg," and that "his friends would make sure [plaintiff] enjoyed [his] stay in ABBR."  (*Id.*).  Plaintiff indicates that he felt threatened by the comment.

Plaintiff next alleges that he went to the Rules Infraction Board (RIB) on October 6, 2015.  (*Id.* at PageID 7).  Plaintiff claims that he plead not-guilty and was ultimately found guilty of the infraction.  The complaint appears to allege that Webb provided false information in the conduct report.  Plaintiff claims that defendant local control chairman Berry determined that his

presence in general population "is likely to seriously disrupt the orderly operation of the institution." (*Id.*).  Plaintiff further alleges that defendant Sgt. Bradly signed the "RIB Designee Signature" although he was not on the RIB Panel.  (*Id.* at PageID 8).

Plaintiff alleges that he was later released from local control, and that he "laid low" because he felt threatened by Lt. Webb.  However, on June 7, 2017, plaintiff claims he received a conduct report from defendant Sgt. K. Sherrill.  (*Id.* at PageID 9).  According to plaintiff the conduct report resulted from plaintiff having his radio on his TV stand.

Plaintiff claims he went to the captain's office to talk to defendant Captain Richardson. Apparently during plaintiff's conversation with Richardson "Lt. Killian had something she wanted to say," but plaintiff "told her to shut-up bitch."  (*Id.* at PageID 10).  Plaintiff further alleges that after informing another inmate that Killian lies, plaintiff was escorted to the segregation unit.  Plaintiff claims he was found guilty at a subsequent RIB proceeding.

Plaintiff indicates that he has named Killian as a defendant[1] because "my property, my laundry detergent was poured over my clothing while under her care, my I.D. was missing and my lock was missing."  (*Id.* at PageID 11).  With respect to defendant Richardson, the complaint includes allegations that plaintiff filed a complaint against her under the Prison Rape Elimination Act (PREA) for sexual misconduct and that Richardson "still made her way around me once placing herself in position to be 10' away from 3 time during my dinner meal."  (*Id.*).

Plaintiff next lists the conduct reports he has received from defendants Sherill, Richardson, Killian, Web, Bradly, Capt. Gause, Officer Fryer, and Officer Sharrock.  Plaintiff

---

[1] Killian is not actually named as a defendant in this action.  (*See* Doc. 1, Complaint at PageID 4).  Plaintiff has also included allegations against Sgt. Gause and Officer Sharrock, who are also not named as defendants to this action. In any event, for the reasons stated below, plaintiff has failed to state a claim for which relief may be granted against these individuals.

4

claims these individuals are "all subordinates of Lt. Webb." (*Id.* at PageID 11–12).

Plaintiff claims that defendant Killian is in charge of inmate mail at LOCI. (*Id.* at PageID 13). He complains that the majority of his letters have been returned to him, marked return to sender or "no one at this address by that name." (*Id.*).

Plaintiff claims that he was transferred to the Warren Correctional Institution (WCI) on December 6, 2017. Plaintiff claims that defendant case manager Ms. Kennedy made him wait for thirty minutes, before dismissing him and telling him to send her a kite. (*Id.* at PageID 14). Plaintiff claims he wanted to be transferred, but Kennedy neglected to keep her appointments with him and "was not dutyful (sic) toward me." (*Id.*). Plaintiff claims he wrote the ODRC central office regarding a transfer. He claims he waited until July of 2017, only to learn that his security review was held without him.

Plaintiff next complains that defendants Fryer and Kennedy, as well as officer Reaver, took his radio and headphones. (*Id.* at PageID 17). He further alleges that Fryer escorted him to the captain's office. During this time, plaintiff claims Fryer "kept twisting my wrist" and "while walking in mid-stride . . . shove me into the door frame, and when regain my balance with abrupt movement he shoved me into the door frame again." (*Id.*). According to plaintiff, Webb and Reaver escorted him to the transportation hold cell and asked plaintiff to fill out a statement of events.

Plaintiff claims that on August 3, 2017, he was found guilty by the RIB, presumably in connection with the incident. Plaintiff claims that Lt. Webb stated "inmate if you come back in front of me this year for anything, I am going to raise your security level to a level #3 and place you in a cell by yourself until you leave." (*Id.* at PageID 18).

5

Next, plaintiff claims that on November 20, 2017, Captain Gause approached him in the cafeteria during breakfast. Plaintiff claims that he asked Gause when he would respond to his kite documents. Gause allegedly told him that he would not respond to them. According to plaintiff, plaintiff then told Gause "you [are] not as strong as you think you are all muscle, no brian (sic)." (*Id.* at PageID 20). After an argument, plaintiff claims he told Gause "you know what leave me alone I am trying to eat." (*Id.*). According to plaintiff, Gause told him to take his feet off of the chair in front of plaintiff. It appears from the complaint that plaintiff claims that he complied with Gause's order, but that he received a conduct report for his failure to comply with the order. Plaintiff alleges that he unsuccessfully appealed the RIB decision to the warden's office. According to plaintiff, Webb entered a not guilty plea without his consent, imposed six days of restrictive housing status, and recommended security level three review. (*Id.* at PageID 21–22).

Plaintiff claims he was subsequently transferred to a holding cell in segregation, patted down, stripped searched, given a uniform, and escorted to a single man cell. (*Id.* at PageID 23). He claims the temperature in the cell was cold, he was restricted to a metal "slab-plate grate-like" bunk, and was not provided a blanket. (*Id.*). According to plaintiff, he requested a blanket from defendant McCoy who responded "when one become[s] available." (*Id.*). According to plaintiff, McCoy never provided the blanket, "so I remain reduced to two sheets." (*Id.* at PageID 25). Plaintiff complains about the water pressure in the shower and sink, that the cell floor was "dirty with heavy dust bunnies," and that the wall had graffiti and dried spit on it. (*Id.* at PageID 24). He further contends that he was overlooked for dinner and was denied outside recreation on occasion. (*Id.* at PageID 25). Finally, regarding his cell conditions, plaintiff claims that a third

shift officer would shine a flashlight on him every fifteen minutes, disrupting his sleep.  (*Id.* at PageID 26).

Plaintiff next alleges that he tried to report officer Fryer for pushing him into the door frame and filing a false conduct report.  However, plaintiff claims that defendant Blackwell told him he needed to file an Informal Complaint Resolution with the shift captain.  (*Id.* at PageID 27).  Plaintiff appears to complain that Blackwell neglected to conduct a use of force interview. (*See id.*).  Later in the complaint, plaintiff also claims to have brought the issue to the attention of defendant Hogan.  (*Id.* at PageID 31).

Next, plaintiff alleges that he was improperly charged for a replacement ID on June 6, 2017 at LoCI.  To the best of the Court's ability,[2] it appears that plaintiff claims that defendant Sherrill took his ID in order to issue a conduct report against him, but failed to return it to plaintiff.  (*See id.* at PageID 29).  Plaintiff claims that he did not receive a satisfactory response to his kite regarding the ID—as well as a request plaintiff made for laundry detergent and a lock—and that he was charged $5.00 for a new ID.  (*Id.* at PageID 30–31).

Without explanation, the complaint next quotes a memorandum concerning inmate appearance and grooming.  (*Id.* at PageID 29).  It appears that plaintiff filed a grievance with Hogan regarding the memorandum.

Plaintiff indicates that he unsuccessfully filed kites and/or grievances regarding many of the above issues.  He further claims that he also sought further review of the denial of his grievances with defendants Berry and Harris, as well as Gary Mohr, the director of the Ohio Department of Rehabilitation and Correction.  (*See id.* at PageID 35–37).

---

2 The complaint quotes at length correspondence between plaintiff and various officers concerning the incidents alleged in the complaint.  (*See*, *e.g.*, *id.* at PageID 27–29; 95–99).

According to plaintiff, he was subsequently transferred to WCI and claims that his personal items were taken from him. (*Id.* at PageID 38). Plaintiff claims he unsuccessfully filed an appeal to the WCI warden defendant Harris, explaining that he was unable to pack up his property. (*Id.* at PageID 37–38). During the transfer, plaintiff further alleges that defendant Farby "place[d] [his] left arm under [plaintiff's] left arm and [his] right hand on [plaintiff's] left shoulder." (*Id.* at PageID 37).

Next, plaintiff complains that on December 17, 2017, defendant officer Moore wrote a conduct report against him, stating that he saw plaintiff punch another inmate. (*Id.* at PageID 38). Plaintiff states that Moore ordered him to stop fighting twice, that plaintiff complied with his orders, and that Moore stated "I'm going to take you down." (*Id.*). Plaintiff alleges that Moore subsequently "grabbed me by both arms around my waist take a couple steps and body slams me to the ground, I hit my head on the cement floor, and my side of my left eye socket bridge near my temple is bust wide open." (*Id.*). According to plaintiff, defendant Lt. Nelson took a picture of his injuries and "a use of force was conduct by a Capt. Walker, he held a disposition (sic)." (*Id.*).

Plaintiff claims that following the incident, he wrote defendant Harris to place an institutional separation between him and Moore. (*Id.* at PageID 39). Plaintiff argued that he was not safe at WCI in light of the incident. Plaintiff alleges that defendant Mr. Craft informed him that "an institution separation was no policy for a correctional officer misconduct other than sexual misconduct." (*Id.*).

Finally, plaintiff makes several allegations regarding his laundry and difficulty obtaining legal materials. (*See id.* at PageID 40). Plaintiff claims that he was told that he had to wash his

sheets with his clothing.  He claims that on three occasions his laundry has been returned to him wet.  With respect to his legal materials, plaintiff alleges that he had to contact the institutional inspector in order to get his legal work.

For relief, plaintiff seeks injunctive relief and monetary damages.  (*Id.* at PageID 42).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his excessive force claim against defendant Moore, based on his allegation that on December 17, 2017 Moore slammed his face into the concrete floor, resulting in injuries to his left eye socket.  Out of an abundance of caution plaintiff may also proceed with his excessive force claim against defendant Fryer, based on his allegation that Fryer twisted his wrist and shoved him into a door frame repeatedly.  *See Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2006).  However, plaintiff's remaining claims should be dismissed.  *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, to the extent plaintiff seeks to bring a claim against Lt. Webb based on threats made in September 27, 2015, he has failed to state a viable claim under § 1983, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute."  *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).  It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."  *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein).  *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004).  Therefore, plaintiff's claims that defendant

9

Webb or any other named defendant threatened him should be dismissed.

To the extent that plaintiff contends that all the factual allegations presented in the complaint are the result of a conspiracy stemming from Lt. Webb's September 27, 2015 comment that his friends would make sure plaintiff enjoyed his stay in segregation, this claim should be dismissed.  Plaintiff claims that "Lt. Webb is the key element" and the other named defendants are all his subordinates or friends.  (*See* Doc. 1, Complaint at PageID 11, 40). However, it is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim."  *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"). Here, construing the complaint liberally, plaintiff's factual allegations are insufficient to suggest that the defendants shared a conspiratorial objective or otherwise planned together to deprive him of a constitutionally-protected right.  Therefore, plaintiff's vague, unsubstantiated and conclusory claim based on a conspiracy theory lacks the requisite specificity to state a cognizable claim under 42 U.S.C. § 1983.

The complaint should also be dismissed against Warden Harris and Warden Justus.  It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel.  *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were

10

somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Plaintiff has not alleged any facts even remotely suggesting that these defendants directly participated in the alleged violations of plaintiff's constitutional rights. With respect to the defendant wardens, plaintiff alleges that he appealed to their offices from RIB proceedings and they failed to take corrective action. (*See* Doc. 1, Complaint at PageID 18, 21, 35, 39, 41). The mere fact that these defendants hold supervisory positions is not enough to impose liability on them under section 1983.[3] Plaintiff has otherwise failed to make any allegation that these individuals violated his constitutional rights.

Plaintiff's claims against various defendants in connection with the RIB hearings or his allegations that defendants provided false information in conduct reports should also be dismissed. Plaintiff fails to state a viable constitutional claim under the Fourteenth Amendment in connection with the RIB hearing, because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v.*

---

[3] Plaintiff's conclusory allegations in the complaint that these defendants failed to supervise or properly train their employees without any "further factual enhancement" is simply insufficient to state an actionable claim for relief against them. *See Twombly*, 550 U.S. at 555-57.

The same is true for defendant Killian, who plaintiff claims is in charge of inmate mail at LoCI. Plaintiff claims that many of his letters were returned marked "no one at this address by that name." (*See* Doc. 1, Complaint at PageID 13). However, plaintiff does not include any factual allegations of wrongdoing on the part of Killian with respect to his mail.

*Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson*, 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir.) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"), *cert. denied*, 133 S.Ct. 429 (2012). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would

trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against the defendant for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

Plaintiff has also not stated a constitutional claim to the extent he has alleged that defendants Webb, Sherill, Richardson, Killian, Fryer, Gause, Sharrock, and Moore wrote false conduct reports which resulted in disciplinary sanctions imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Plaintiff's allegations that defendants failed to respond to his kites and/or grievances or failed to conduct investigations of his complaints are also subject to dismissal at the screening stage. As noted above, plaintiff claims that Gause and Hogan neglected to respond to his kites and Blackwell failed to conduct a use of force investigation. However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487

13

F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at

*2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance

procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because

"[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller*

*v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug.03, 1998) (citations omitted).

Prison officials whose only roles "involve their denial of administrative grievances and their

failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure

to adequately investigate claims of misconduct rise to the level of "encouragement" that would

make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir.

1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

      To the extent plaintiff alleges he was deprived of his ID, laundry detergent, radio,

headphones, or other property without due process of law, his allegations are insufficient to state

an actionable § 1983 claim. In order to assert such a claim, plaintiff must first "plead . . . that

state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066

(6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt*, 451 U.S. 527 (1981).

"If satisfactory state procedures are provided in a procedural due process case, then no

constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub.*

*Sch. Sys.,* 360 F.3d 583, 587-88 (6th Cir. 2004). Accordingly, in order to state a procedural due

process claim under section 1983 "the plaintiff must attack the state's corrective procedure as

well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991)

(quoting *Vicory*, 721 F.2d at 1066). A plaintiff "may not seek relief under Section 1983 without

first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson,* 360 F.3d at 588.

Plaintiff has not alleged any facts even remotely indicating that his remedies under Ohio law to redress the wrong of which he complains are inadequate. Plaintiff's complaint fails to explain why a state tort remedy for conversion would not suffice to address his claim. *See Fox v. Van Oosterum,* 176 F.3d 342, 349 (6th Cir. 1999). Therefore, he fails to state a due process claim that is actionable in this § 1983 proceeding.

The undersigned further finds that plaintiff's allegations regarding the prison conditions do not rise to the level of a constitutional violation. The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles,* 450 F. App'x 448, 455–56 (6th Cir. 2011) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes,* 452 U.S. at 347); *see also Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer,* 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). He then must subjectively show the defendant acted "wantonly," with "deliberate

15

indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834).

In this case, plaintiff's allegations do not rise to the level of an Eighth Amendment violation. First, to the extent that plaintiff bases his claim on his confinement in disciplinary segregation, he has failed to state a claim upon which relief may be granted. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir.2003) (citing *Hudson v. McMillan,* 503 U.S. 1, 9 (1992)). Furthermore, plaintiff's complaints about the metal bed, his only being provided with two sheets, the water pressure, and other allegations regarding his cell do not amount to a deprivation of "the minimal civilized measure of life's necessities."

Moreover, the discomfort experienced by a prisoner when some meals are denied over a short period of time does not rise to the level of "wanton infliction of pain" so long as the prisoner continues to receive adequate nutrition. *Richmond,* 450 F. App'x at 456. Although plaintiff claims he was overlooked for dinner on occasion, this does not amount to cruel and unusual punishment under the Eighth Amendment. *See Cunningham v. Jones,* 667 F.2d 565, 566 (6th Cir. 1982) (serving a prisoner one meal per day for fifteen days did not violate the prisoner's Eighth Amendment rights where that meal was sufficient to maintain normal health for the 15–day time period). *See, e.g., Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (finding that the plaintiff stated a cognizable Eighth Amendment claim regarding inadequate nutrition when he asserted that he lost twelve pounds in a month because of inadequate portions). Plaintiff has neither alleged that he was denied adequate nutrition, nor has he alleged any harm as

16

a result of the allegations in the complaint.  *See, e.g.*, *Price v. Jones*, Case No. 1:12-cv-360, 2012 WL 1854299, at *4 (S.D. Ohio May 4, 2012) (Report and Recommendation) (Dlott, J.; Litkovitz, M.J.) (recommending dismissal of Eighth Amendment claim based on the plaintiff's failure to allege that his health suffered as a result of alleged inadequacies in the prison meal plan), *adopted* 2012 WL 2269265, at *1 (S.D. Ohio June 18, 2012); *White v. Gregory,* 1 F.3d 267, 269 (4th Cir. 1993) (finding the allegation that the plaintiff was forced to go without food for eighteen hours on the weekends failed to rise to a violation of the Eighth Amendment without any showing of deleterious effects of the meal plan).

Plaintiff's allegations that defendant Farby "place[d] [his] left arm under [plaintiff's] left arm and [his] right hand on [plaintiff's] left shoulder" in the course of transporting him to a new cell (*see* Doc.1, Complaint at PageID  37) is also insufficient to state an excessive force claim under the Eight Amendment.  "Not every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 38 (internal quotation marks and citation omitted).  "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.*  Therefore, plaintiff's claim that Farby placed his hand on him should be dismissed.

Plaintiff's allegation that he was denied an institutional separation between him and defendant Moore also fails to state a claim for deliberate indifference to safety under the Eighth Amendment.  Plaintiff claims that he requested a separation from Harris and Craft following the

17

December 17, 2017 attack.  However, to state an Eighth Amendment claim against prison officials based on their failure to protect him from an attack, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Vaughn v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988) (finding that a prison administrator's indifference to brutal behavior of guards towards inmates is sufficient to state an Eight Amendment claim), *overruled on other grounds by Koch v. Ricketts*, 68 F.3d 1191 (9th Cir. 1995).  A prison official may be held liable for his failure to protect inmates from attacks only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  Plaintiff's complaint fails to allege any facts showing that defendants were aware that defendant Moore posed a future threat to plaintiff's safety following the incident, yet failed to take reasonable actions to prevent the assault.  In the absence of such allegations, the complaint fails to state a claim for relief under the Eighth Amendment.

Finally, to the extent that plaintiff intends to bring a First Amendment claim in connection with his allegations that he experienced difficulty accessing his legal materials, this claim should also be dismissed.  An inmate must plead and demonstrate that the lack of legal materials or the shortcomings in the prison legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

In addition, when bringing a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he predicate claim (must) be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* In other words, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 & n. 3).

Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result of the alleged inadequacies of the jail facilities and/or access to his legal materials. Without such allegations, plaintiff's complaint fails to state a claim for relief for a denial of access to the courts under the First Amendment.[4]

Accordingly, in sum, plaintiff may proceed with his excessive force claims against defendants Moore and Fryer. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). Having found that the remaining allegations in the complaint fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed.

### IT IS THEREFORE RECOMMENDED THAT:

The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's excessive force claims against defendants

---

[4] The undersigned finds that plaintiff's remaining allegations do not rise to the level of a constitutional violation. Plaintiff claims that defendant Richardson came within ten feet of him during dinner, despite plaintiff having filed a PREA complaint against her and that Kennedy made him wait for thirty minutes, neglected to keep her appointments, and was not dutiful toward him. Absent any other allegations of wrongdoing on the part of these defendants, the complaint fails to plausibly allege that these individuals violated plaintiff's rights.

Moore and Fryer.

## IT IS THEREFORE ORDERED THAT:

1. The United States Marshal shall serve a copy of the complaint, summons, the Order granting plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Moore and Fryer as directed by plaintiff, with costs of service to be advanced by the United States.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

20

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MAURICE LEE SOLEDAD, R.,          Case No. 1:18-cv-126
     Plaintiff,

                                     Barrett, J.
     vs.                           Bowman, M.J.

LT. WEBB, *et al.*,
     Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).